STATE of Iowa, Appellee,

v.

Keith Floyd BLOOMER, Jr., Appellant.

No. 99–1263.

Supreme Court of Iowa.

Oct. 11, 2000.

Rehearing Denied Nov. 10, 2000.

Roger A. Huddle, Wapello, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, Barbara A. Edmondson, County Attorney, and Eric R. Goers, Assistant County Attorney, for appellee.

NEUMAN, Justice.

This appeal by defendant, Keith Bloomer, Jr., follows his conviction for operating while intoxicated (OWI), second offense, in violation of Iowa Code section 321J.2 (1997) [1]. Bloomer challenges the court's failure to grant his motion to suppress, selected evidentiary rulings, and its ruling on his claim that a former conviction for aiding and abetting OWI could not be used to enhance the current charge. Finding no merit in any of these contentions, we affirm.

Bloomer was traveling westbound on highway 92 in Washington County, Iowa, when he crossed the center line, forcing Iowa State Trooper Allen Konecne—who was proceeding eastbound—to swerve out of the way to miss him. The trooper turned around and followed Bloomer for several miles. His in-car video camera captured Bloomer's driving. After observing the vehicle repeatedly weave from one side of the highway to the other, the trooper pulled Bloomer over. Bloomer's speech

---

1. All statutory references in this opinion are to the 1997 Code unless otherwise indicated.

was slurred and he smelled of alcohol. The trooper administered three field sobriety tests. Bloomer failed all of them. The trooper then arrested Bloomer and transported him to the county jail.

At the jail, the trooper read the implied consent advisory to Bloomer and requested a breath sample. Bloomer reportedly wanted a urine test instead of a breath test. Although Bloomer now claims he never refused *any* test, the trooper testified the two of them discussed the matter for approximately forty–five minutes. He advised Bloomer that his refusal to sign the form would be deemed a refusal of the requested breath test. When Bloomer continued to insist on a urine test, Trooper Konecne marked the "refused" box on the implied consent form.

The State charged Bloomer with OWI, second offense, based on Bloomer's prior conviction in 1993 for aiding and abetting OWI. Bloomer moved to suppress the State's proof that he refused to submit to a breath test, and sought a ruling in advance of trial concerning his claim that aiding and abetting an OWI is insufficient, as a matter of law, to enhance an OWI conviction from first offense to second offense. The court overruled Bloomer's motion to suppress and rejected his aiding and abetting argument. The case proceeded to trial.

At trial the State introduced the videotape of Bloomer's driving and arrest. The State also provided a transcript of the videotape, to assist the jury in understanding the audio portion, but did not introduce the transcript into evidence. The court overruled Bloomer's later request to replay the tape during his cross-examination of Trooper Konecne, and similarly rejected defense counsel's proposed use of the transcript to impeach or cross-examine the officer.

The jury found Bloomer guilty of OWI. Thereafter it reconvened to consider evidence on the enhancement to second offense. From the court's entry of judgment and conviction on the jury's guilty verdict on the enhanced charge, Bloomer now appeals.

## I. Test Refusal.

■ Bloomer contends the court misinterpreted the implied-consent provisions of Iowa Code sections 321J.6(2) and 321J.11 when it overruled his motion to suppress the State's proof that he refused a breath test. When a determination of admissibility of evidence turns on statutory interpretation, our review is for the correction of errors at law. *State v. Adams*, 554 N.W.2d 686, 689 (Iowa 1996).

Under Iowa law, a person who operates a motor vehicle under circumstances giving rise to a reasonable belief that the person is intoxicated is deemed to have given consent to withdrawal of a specimen of blood, urine or breath to determine alcohol concentration. Iowa Code § 321J.6(1). The "implied consent" procedures provide that a "peace officer shall determine which of the three substances, breath, blood or urine, shall be tested. Refusal to submit to a chemical test of urine or breath is deemed a refusal to submit . . . ." *Id.* § 321J.6(2). Proof of a defendant's test refusal may be submitted in evidence at trial. Iowa Code § 321J.16.

Bloomer claims his test refusal under the implied consent procedures was "invoked by [the trooper] without merit." He rests this argument on section 321J.11. The statute states, in pertinent part:

The person may have an independent chemical test or tests administered at the person's own expense *in addition to any administered at the direction of a peace officer.* The failure or inability of the person to obtain an independent chemical test or tests does not preclude the admission of evidence of the results of the test or tests administered at the direction of the peace officer.

*Id.* § 321J.11 (emphasis added).

Our court of appeals explained the scope of this statutory entitlement in *State v.*

*Mahoney,* 515 N.W.2d 47 (Iowa App.1994). In *Mahoney,* the court found that a person arrested for OWI must submit to the officer's requested test before being entitled to take an independent breath, blood or urine test. *Mahoney,* 515 N.W.2d at 50; *accord State v. Wootten,* 577 N.W.2d 654, 655 (Iowa 1998). The court's holding rested on evident legislative intent: use of the words "in addition to" in section 321J.11 makes clear that a defendant "must submit to a state-administered chemical test before being allowed to demand an independent test." *Mahoney,* 515 N.W.2d at 50.

 Because section 321J.11's entitlement to an independent test is only applicable when a defendant has submitted to a requested test, a reviewing court must determine from the facts whether a defendant has attempted to assert his right to independent testing without actually refusing the test requested by an officer. In *Ginsberg v. Iowa Department of Transportation,* 508 N.W.2d 663 (Iowa 1993), this court considered an alleged test refusal in this context. We observed that factors bearing on the decision included the defendant's and the officer's words and conduct as well as the surrounding circumstances. *Ginsberg,* 508 N.W.2d at 664. In *Ginsberg,* as here, officers asked the defendant to submit to a breath test following his arrest for operating while intoxicated. *Id.* Ginsberg, having said he wanted a blood or urine test, was then asked if that meant he was refusing to take the breath test. Ginsberg reportedly stated "that he was not refusing to take the breath test but that he wanted his blood or urine tested *as well.*" *Id.* (emphasis added). The officers treated this as a refusal and this court reversed, concluding that the record revealed Ginsberg's attempt to assert his right to independent testing rather than a refusal of the requested test. *Id.* We nevertheless reiterated the rule that "anything less than unqualified, unequivocal consent is a refusal." *Id.* (quoting *Ferguson v. Iowa Dep't of Transp.,* 424 N.W.2d 464, 466 (Iowa 1988)).

The record before us, though similar to *Ginsberg,* contains important differences. The trooper first testified that Bloomer insisted on a urine test *instead of* a breath test. But he conceded on cross-examination that Bloomer *stated* he did not refuse the officer's test. Bloomer, testifying on his own behalf, essentially agreed with this characterization of their conversation. Importantly, however, the record reveals that Bloomer's actions spoke louder than his words. After forty-five minutes of discussion, Bloomer had neither signed the form nor given a breath test. The officer treated the impasse as a test refusal.

 On appeal, Bloomer seeks to justify his inaction on the ground that the trooper never told him he could take an independent test in addition to the requested breath test. The officer, however, was not required to convey that information. *Wootten,* 577 N.W.2d at 655. Bloomer exercised his statutory right to consult with counsel. *See* Iowa Code § 804.20. Although Bloomer now complains about Trooper Konecne's emphasis on *his* right to choose the test, the record reveals no denial by the trooper of any request by Bloomer to take an independent test. *Cf. Casper v. Iowa Dep't of Transp.,* 506 N.W.2d 799, 802 (Iowa App.1993) (dicta suggesting that proof of denial would require suppression of police-administered chemical test).

Under this record, we find no error by the court in refusing to suppress proof of Bloomer's test refusal. Bloomer neither consented to the test chosen by the peace officer, nor did he invoke his statutory right to an independent test. Thus the court committed no error in admitting evidence of his refusal to submit to the requested breath test.

## II. Evidentiary Rulings.

 Bloomer next challenges two evidentiary rulings related to defense counsel's unsuccessful attempt to use the videotape on his cross-examination of Trooper

Konecne, and the court's refusal to let him impeach or question the officer using the transcript of that tape. To the extent Bloomer claims these rulings violated his constitutional right to confront witnesses, we review his claim de novo. *State v. Veal,* 564 N.W.2d 797, 807 (Iowa 1997). The trial court enjoys broad discretion with respect to the scope of cross-examination and the admissibility of evidence. To succeed on a claim of reversible error, the defendant must show that (1) the trial court abused its discretion, and (2) prejudice resulted. *State v. Chambers,* 370 N.W.2d 600, 602 (Iowa App.1985).

■ *A. Replaying the videotape.* During cross-examination of Trooper Konecne, Bloomer's counsel sought to replay portions of the videotape. He purportedly wanted to show the time when the officer first turned on the tape, and the time of the stop, to establish that the tape did not record the entire distance that the officer followed Bloomer. The State objected on the ground replaying the tape would be repetitious and immaterial to any essential element of the State's proof. The court sustained the objection. Upon further inquiry by defense counsel, the court clarified that counsel could question the witness about the tape and the jury would have it during deliberations. But the court reaffirmed its belief that the proposed line of inquiry was irrelevant and unduly repetitious. In the court's words, "[I]t's not going to be re-shown to the jury during the course of the trial. They saw it once and that's enough."

On appeal Bloomer challenges the court's reasoning and fairness. He points to the fact that the state was permitted to replay a portion of the videotape during *its*

direct examination of a witness. (Defense counsel made no objection.) And on the question of relevance and materiality, Bloomer notes the trooper conceded that the time on the videotape was wrong, not everything he observed was clearly shown on the video, and the video was turned on and off at his discretion. These were matters, however, which defense counsel explored thoroughly and vigorously on cross-examination. We are not persuaded by Bloomer's argument, or a review of the record, that the effectiveness of counsel's cross-examination was undermined in any way by his inability to replay the videotape for the jury. So although we are not entirely satisfied by the rationale given by the court for its ruling,[2] we cannot say the defendant was prejudiced by it. No ground for reversal appears.

■ *B. Use of the transcript.* Somewhat inexplicably, the court also refused defense counsel's attempt to cross-examine the trooper with the transcript of the videotape prepared by the State for the jury's use in understanding the audio portion of the tape. Testimony by the trooper established that he used the document to refresh his recollection of the arrest. Under these circumstances, Iowa Rule of Evidence 612 comes into play. The rule states, in pertinent part:

> [I]f a witness uses a writing to refresh his memory for the purpose of testifying ... [and] the court in its discretion finds a necessity in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence

2. In post-trial rulings the judge appeared to change her reason for not allowing defense counsel to replay the videotape, asserting for the first time a "logistical" impediment. The judge explained that the small size and configuration of the courtroom prevented her from viewing the tape along with the jury and simultaneously ruling on objections. She suggested she would have considered proposals from counsel to remedy the situation "but none were proffered at the time." With some justification, counsel on appeal points out the difficulty of satisfying the court—and perhaps making necessary accommodations—if the true (or additional) reasons for a ruling are not expressed until after the time has passed to address them.

those portions which relate to the testimony of the witness.

Iowa R. Evid. 612.

The record reveals that the State objected to defense counsel's use of the transcript on the following ground: "It sounds like he's going to be impeaching with the transcript, and I believe the transcript has already been used for the jury and its use has been completed." Undeterred, defense counsel proceeded to question the trooper whereupon the prosecutor renewed his objection, which was again sustained by the court. When asked about its ruling, the court replied that the transcript had not been "given" to the jury. So Bloomer's counsel offered it into evidence. The State objected, the court sustained the objection and, when pressed for a reason, stated "I'm not aware of any legal basis for the transcript to go to the jury." Counsel was permitted to make an offer of proof at the close of the day's evidence but, again, his attempt to use the transcript to cross-examine the trooper was rejected by the court.

The court reconsidered and reversed its ruling before the start of the second day of trial. The record reveals, however, that neither Bloomer's counsel nor the State thereafter tendered the transcript into evidence. Given this state of the record, Bloomer is in a poor position to claim reversible error. He has shown no prejudice but for a claim that his counsel's trial strategy was thwarted. Although this is no small matter, we are convinced from a review of the offer of proof that the trooper's testimony did not differ materially from his direct and cross-examination. The record—enhanced by the videotape—contains overwhelming proof of Bloomer's intoxication at the wheel and during his interaction with the trooper. No ground for reversal appears.

### III. Aiding and Abetting.

█ Bloomer's final assignment of error relates to the enhancement phase of the trial. He claims that his 1993 conviction for aiding and abetting OWI cannot furnish the basis for enhancing the current charge from first-offense to second-offense under Iowa Code section 321J.2(2)(b). His argument is two-pronged. First he argues that his prior conviction cannot be used, as a matter of law, because his written plea of guilty specifically stated that he was not driving. Second he contends the court erred when it denied defense counsel the right to introduce Bloomer's certified driving record into evidence. The document does not show the 1993 conviction and so, Bloomer argues, the prior offense cannot be used to enhance the current charge. We review these contentions for the correction of errors at law. *State v. Chesmore*, 474 N.W.2d 551, 552 (Iowa 1991).

Iowa Code section 703.1, the general aiding and abetting statute, provides that "[a]ll persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals." Challenges to the doctrine are most often found in cases involving robbery, kidnapping, and murder where an accomplice seeks to escape enhanced punishment on the theory it was the principal who wielded the offending weapon or struck the fatal blow. *E.g., State v. Baker*, 560 N.W.2d 10, 15 (Iowa 1997) (robbery); *Fryer v. State*, 325 N.W.2d 400, 406 (Iowa 1982) (murder); *State v. Hayes*, 532 N.W.2d 472, 478 (Iowa App.1995) (kidnapping). But the doctrine has been recognized, though not as recently, in prosecutions for driving while intoxicated. In a 1929 case in which a defendant and his accomplice's "common mission in driving the car" was "to procure and drink liquor," we reversed the accomplice's conviction (because the trial court gave no corroboration instruction) but affirmed the aiding and abetting principle in the drunk driving context:

> Even though only one person can be engaged in the physical operation of a motor vehicle at one time and even

though another may be incompetent in person to commit the crime, it is plain that such other, though not engaged in such physical act, may have caused or aided in the operation by a drunken person and hence liable to indictment therefore.

*State v. Myers,* 207 Iowa 555, 556, 223 N.W. 166, 166 (1929). We later affirmed the *Myers* principle in another drunk driving case, *State v. Storms,* but there, too, were required to reverse the conviction based on instructional error. 233 Iowa 655, 656–57, 10 N.W.2d 53, 54 (1943).

 With these cases in mind we consider Bloomer's argument. The fact that he acknowledged in his earlier guilty plea proceeding that "he was not driving" bears only on his status as an accomplice, rather than a principal, to the crime of OWI. He cannot deny the legal fact that "[a] person found guilty as an aider and abettor is guilty as a principal." *Fryer,* 325 N.W.2d at 406. Bloomer's assertion to the contrary is without merit.

Bloomer's second assertion on this point is likewise unavailing. His argument rests on Iowa Code section 321J.2(4)(a) (Supp.1997), which provides that "[a]ny conviction or revocation deleted from motor vehicle operating records pursuant to section 321.12 shall not be considered as a previous offense." Bloomer reasons that because his 1993 conviction does not appear on his certified driving record, it cannot be used as the basis for enhancement. He then contends the trial court abused its discretion in refusing to submit this allegedly relevant document into evidence.

Bloomer's argument overlooks the import of section 321.12. That statute directs the department of transportation *not* to delete records of convictions until *twelve* years after the conviction. *See* Iowa Code § 321.12. The fact that the department seemingly erred in its record keeping duties is essentially irrelevant to the State's case. The State tendered proof of the defendant's adjudication of aiding and abetting OWI in the form of a judgment entry and Bloomer's written guilty plea to the offense. The department's record is not dispositive of his status as a second offender. The court was within its discretion in excluding the document on relevancy grounds. Accordingly we affirm the court's judgment and sentence for second-offense OWI.

**AFFIRMED.**

All justices concur except SNELL, J., who takes no part.